Good morning. James Fidellin for Fortune Dynamic. I would like to reserve five minutes for rebuttal. This is a situation where Judge Reel granted a summary judgment improperly. This is not a small case. We are dealing with 600,000 tank tops having been distributed by Victoria's Secret, bearing the delicious mark. What we have is a situation which this Court has repeatedly indicated is inherently factual, and that is, was there a likelihood of confusion in this case? The question, of course, is who is better to make that determination, a jury of ordinary consumers or a judge? The second issue, of course, we have is whether or not this case should be sent back to Judge Reel, and we would submit that in order to preserve the appearance of justice, given what has happened in this case, it would be inappropriate to send it back to Judge Reel. Turning first to the summary judgment issue, we have a number of mistakes by Judge Reel. Number one, he weighed credibility of witnesses. He decided that the expert, Howard Merrylander, was not credible and not reliable. As this Court has repeatedly said, summary judgment is something that should be used sparingly when it comes to such a factual and an inherently factual determination. When it comes to an expert's testimony such as Mr. Merrylander, again, this Court has consistently held that the objections that were raised by Victoria's Secret that go to whether or not it was a correct survey, whether or not he correctly analyzed the data, those go to the weight. Those go to things that the jury should consider. The key question as to whether or not the expert's report can go to the jury is whether or not it was conducted according to acceptable principles. In this case, we don't have any evidence whatsoever or any expert opinions that this was not done according to the acceptable principles. In fact, Mr. Merrylander is an experienced individual in this area. He's been at this for 40-plus years. He's qualified as an expert in 45 cases. And he used what has been acknowledged as a squirt-type format or squirt-format-type survey. Courts have consistently said squirt-format surveys are where the – are the appropriate. I wonder if I could direct your attention to one of the points that you raised that I'm a little concerned about. Under Fleetcraft. Yes. The strength of the mark factor I want to focus on specifically. What evidence is there concerning Fortune's use of the delicious mark for any goods beyond footwear? Well, the mark – first of all, we have to go back to the TTAB cases which indicate that we're dealing with – that there is a relation between footwear and other wearing apparel. I appreciate that. But I'm just saying, is there any evidence that Fortune has ever used the delicious mark on any goods besides footwear? I don't believe that's the standard under Fleetcraft. Is there an intent? I understand that. My question is, is there any evidence that Fortune has ever used the delicious mark for any goods beyond footwear? No. Okay. It has used it on over 12 million pairs of footwear since 1997. I get the thrust of your argument. You know, it is a balancing test, of course, with Fleetcraft. I just wanted to make certain that there was no question about this one issue. No. It was also – if you want to go to strength of the mark, it was also sought out by CHAZ Legion who requested that they be able to license it for use on other apparel. And those negotiations started prior to the use by Victoria's Secret. And, in fact, there was an agreement in principle prior to the use by Victoria's Secret. It wasn't until later after the initial use that the definitive agreement was signed, and then at that point Fortune filed for a trademark registration on other items with an intent to use application because CHAZ, under the license agreement, intended to use it. So predating the use, we do have evidence of some strength by them being sought out by somebody to license the mark. Is there any other Fleetcraft factors you'd like to address? Not for now. Okay. I'd like to move back to Mr. Marylander. Again, click billiards case from this circuit, questions as to analysis or methodology go to the weight. The objections that were raised go to methodology and to analysis. We also have a situation with Mr. Farran as to his testimony. Judge Reel didn't say anything about it when he ruled on the case, but when the final documents were submitted, they had a number of objections regarding Mr. Farran. He is not a scientific expert. Under the cases that have been decided, the Daubert and Kumo cases, you have to look then to his knowledge and experience and ability. And is it helpful to the Court? Not. Can we verify the scientific reliability? Mr. Farran has been in advertising and marketing for over 40 years. He has dealt with trademarks. He's dealt with things, describing of goods. His testimony went to the issue of trademark use, one of the fair use. How is, what was, in a marketing sense, what was going on here? Victoria's Secret, of course, says they're marketing people. Well, we were trying to describe the flavor of the goods or of the item. Mr. Farran says, wait a minute, marketing, that's not how you do it. So his testimony also gives something that a jury could certainly have found, that there was a trademark usage under the fair use. I'd like to turn to the fair use issue for a moment. There are three factors that the Court must look at in determining whether or not there is fair use. Was it used as a trademark? Was it used fairly and in good faith? And was it used only to describe the goods or services? That's the key, only. Because we have the testimony of both the CEO of Victoria's Secret and their marketing director, Ms. Mosack, that it was also intended to be a positive self-descriptor of the wearer. That's not describing the lip gloss taste. It's not being used for that purpose. As the Levi Strauss case indicates, it's not just point of sale that needs to be considered. Sure, at point of sale, they have the top folded up with the word Delicious there with a lip gloss in the package with it. But once we took it out, once it's taken out of that package, there's no association whatsoever once it goes on to the wearer with the lip gloss. You have prominently displayed on the front of the top the word Delicious with a capital D. There's nothing that says Victoria's Secret, Beauty Rush, or anything that's visible. In fact, if you look at the word Delicious. Let me deal with this fair use issue. What evidence is there that Victoria's Secret intentionally used the mark Delicious to confuse customers into thinking that Victoria's Secret tank tops came from or associated with fortune? I don't think the liberty is an element of fair use. It's was it used in good faith. And that's a jury issue because there's ample evidence to find that it was not used. Again, I appreciate your perspective. I'm simply trying to understand what evidence is there. that Victoria's Secret intentionally used the term Delicious to try to get confused customers into thinking that their tank tops were in any way associated with your client? There was no intentional action that I know of at this point. Okay. So going back to fair use a moment, when you think about this tank top and how it's displayed, not only was it there folded up with the lip gloss, they have life-size pictures of the model to sell with the word Delicious on the front of the top with the lip gloss barely visible. And to me, one of the most telling pictures is the one that was in evidence of Britney Spears on the front page of the New York Times wearing the tank top with the shaved head. I don't know what Delicious is describing in that picture either. So clearly it is not only used to describe the goods or services. Yes, they had the word Yum, but it was in the back. It couldn't be seen. Yes, the label said Beauty Rush, but it couldn't be seen once it was taken away from the point of sale. You didn't view Britney Spears in that setting as being delicious? No, Your Honor, I did not. I'd like to go on for a moment to the issue of whether or not this case should be sent back to Judge Reel. In this case, Judge Reel is an experienced judge. He knows the law. He knows what the tests are for summary judgment, what's appropriate, what's not. And he clearly disregarded it when he found – started addressing issues such as credibility. But you want this sent back for trial, right? Yes, Your Honor. Okay. Well, why – what is there in the way that Judge Reel conducted this that would suggest that Judge Reel couldn't conduct a trial appropriately? Well, he's got a rule on evidentiary rulings. He's got a rule on motions in limine, jury instructions. We see – we see these motions for summary judgment all the time, and we reverse some and send them back for trial. We don't usually remove the district judge. I understand that. We have judge – you know, the issue here is the appearance of justice. We have a very minor statement on the record. But the appearance of justice wouldn't be apparent to those who are going to be deciding that, which would be the jurors. They won't come in with any knowledge that this has been up here, and if we reversed it, that we had reversed it, or that Judge Reel had ruled on anything. Unfortunately, thanks to the L.A. Times, I think every juror may come in with some knowledge about Judge Reel. But, you know, that's the fact of life in the litigation business. As to what a – would a juror know? No, they wouldn't. But we have – litigants have a right to an appearance of justice as well. They have a right to believe that their cases are being fairly considered and fairly handled in the system. And in this particular case, Judge Reel has, to coin a phrase we used before, rushed to judgment on this case. He gave a very minimal ruling. He then ultimately adopted an extensive findings of fact and conclusions of law, went far beyond the ruling. He did that before the time that Fortune even had to file its own comments and objections and suggestions. When Fortune gave him the opportunity to correct that, when it filed its motion to amend or correct the judgment, rather than saying, I've considered them, I don't change anything, which certainly he could have done. If he had done that, I don't know why he's standing here arguing this. Rather, he said, there's nothing new. Well, if he never considered them before and they're now being presented, how can there be nothing new? Without commenting on whether there might have been circumstances where Judge Reel warranted having a case sent elsewhere, this is a pretty straightforward trademark Lanham Act kind of claim. He did not rule in the way you felt was appropriate. We may or may not agree with you, but whatever the outcome of your appeal, what is there in this case that you find so onerous, so off the wall on Judge Reel's part that warrants are sending this to a different judge? He just, to use a phrase that came out of one of the other cases, it looks like Justice Light. He just quickly, he had the case for a month. He came in and figured, you know, ultimately it was going to be. Almost, with respect, counsel, almost everybody in your situation feels the same way, don't they? If they don't win the lower court, they think that they got a raw deal. If the tables were turned and you were sitting in the shoes of Victoria's Secret, you wouldn't be making this argument. Not at all, Your Honor. I mean, in 30 years, I've had plenty of cases where I've walked out and said, gee, I don't agree with the judge, but he certainly thought about it, considered it, made a decision within his discretion. Here, it feels like we've gotten short shift from Judge Reel. He looked to the issue of expediency of how do I get rid of a case quickly and did it, rather than doing the deliberative process that a litigant is entitled to receive from the legal system. And that's the appearance of justice again. Justice is a getting a fair hearing, getting an opportunity to present one's case and getting it to be considered by the judge or jury, whoever the decision-maker is, rather than just, I don't think your witness is credible, goodbye. Well, by making this very argument, don't you create problems with Judge Reel? I mean, let's say you win and he goes back and Judge Reel knows that you've made this argument. What impact do you think that has on him? It's a risk we have to take when we make the argument. We're well aware that that is a risk in making this argument. And that's why we made the argument, because we felt that it was important enough and we felt strongly enough about it that we had to make this argument to the court and balance that against the risk that we might upset Judge Reel if we ended up back with him. It's a risk we had to take. Counsel, you have a minute 18 left. Unless there's a specific question, I'll reserve it for my rebuttal. Good morning, Your Honors. Good morning. I want to take a step back and look at the big picture, why we're here. We're here because Victoria's Secret used the word delicious on a pink tank top across the front. And it did it, and it sold them only in Victoria's Secret stores or on its website and only in connection with a lip gloss that was flavored and, frankly, is delicious. You really like it, huh? You know what? I got a sample. I did. That's why we're here. Fortune Dynamic has a trademark registration for the word delicious for shoes. It has used that trademark for 10 years only on shoes. That registration does not give it a monopoly over the word delicious in its descriptive sense when it is used fairly, and it does not give it a monopoly over the word delicious when there is no likelihood of confusion. The district court properly granted summary judgment on both of those independent grounds. I guess I would like to get your enlightenment on a couple things. As you very well know, summary judgment in this area is highly disfavored because it tends to be very factually oriented. And there are, of course, several elements, seven, eight elements of the sleek craft case that need to be considered in terms of the likelihood of confusion. And as I have gone through these in preparation for this case, there are just a whole bunch of them that jump out to me as problematic, probably issues that raise genuine issues of material fact. And I'm hoping you can clarify this for me. For example, on the issue of whether there was actual confusion, the Marylander survey, which was excluded, suggested that after accounting for noise and so on, there was an 11 percent confusion rate as to whether the producers of the tank tops and shoes were affiliated with a 28 percent confusion rate as to whether delicious shoes and delicious tank tops came from the same company. Now, I don't know whether that's an accurate survey, whether they could have been torn to pieces, but under the circumstances, why does not that raise an issue of material fact as whether there was actual confusion? First of all, Your Honor, the district court properly excluded it, and it probably the district court properly excluded the Marylander survey for a couple of reasons. Not because Mr. Marylander is not a qualified expert and can't do a survey. He can. This survey, however, did not meet acceptable principles. They call it a squirt survey, and the case is from, I believe, the Eighth Circuit. It's squirt versus 7-up, and it is a well-known survey because it is highly controversial. And what he did was he used the questions from the squirt survey, but he didn't actually perform that survey using real market conditions or doing anything to make sure that the respondents were within the right demographic. That is not within acceptable principles. He did a what's called side-by-side, even though it's actually a seriatim survey. In the Ninth Circuit, the Levi case says that is not acceptable. But more still, and so I would actually submit that squirt is not accepted in this circuit. But worse than that, he didn't do it using any real customers or using any real-world conditions. He took the garment, showed a picture, and then asked whether it was from the same company or the second question was a related company to the company that puts out delicious shoes. Now, the inherent unreliability of this survey is demonstrated by the responses to the second question. More people in the control group, which was shown a similar tank top with the word came from a related company to the shoe company than did the people who saw the delicious tank top. Why doesn't that go to the weight of the evidence rather than whether it is not scientific? Because what shows that it's not, the reason it's not scientific is because it wasn't done using real market conditions. Even squirt was done using real market conditions. Okay. Your criticism is they haven't used real market conditions. Your bottom line is it looks like they didn't use real market conditions and it may even be favorable to us because of the way that it came out. No, not quite. There were two sets of questions. The first is did the products come from the same company? And the second was did they come from companies that are related or affiliated in some way? And the fact that they didn't use real market conditions is inherently problematic and goes straight to whether or not it was done with acceptable principles. The reason, the way you can tell that that actually has an impact is that more people in the test group were confused in response to the first question and more people in the control group were confused in response to the second question. A reliable survey, and something has to be reliable in order for it to be admitted under 403, frankly. So you're suggesting that even if you were at a trial, that it would have been excluded under 403? Correct, Your Honor. I think it is absolutely of no probative value, and that is demonstrated by the inconsistent and starkly inconsistent results. But if you just look at what he did, there is no case that we found or that they cited in which his methodology has been used and accepted. He cites a couple of cases, Fortune cites a couple of cases in a footnote, and only two of them are reported. The first one doesn't discuss the survey at all and says that the factor of actual confusion doesn't cut in favor of either party, despite the fact that they had the survey by Mr. Marylander. The second one, which involves Mattel, actually did a similar survey, but they went to the site where the products were being sold and they questioned actual customers. He didn't do that here. He hired E-Rewards. I could sign up for E-Rewards, you could sign up for E-Rewards, anybody can sign up for it. You don't know who it is, and it's not at the point of purchase. And they make a big deal out of the fact that it's a squirt survey. It's not. The bottom line is this would never have gotten in under your view under 403, even if it were an actual trial, and therefore the judge did an error because it couldn't have been in, couldn't have raised material issues of fact because it would have never gotten in. That is part of our reason. The second, the first part of our argument is under 702, it doesn't come in because they have not pointed to any case in this circuit or frankly elsewhere where those, where that methodology has been used. That's almost a Daubert kind of a thing, right? Correct. And it is not abuse of discretion for the district court to exclude that survey. Okay. Did, were they given an opportunity to bring outside experts in who would testify as to the validity of the survey? They could have brought in whatever survey, whatever experts they wanted to bring in. Was this, was it challenged in such a way that they were on notice that they needed to bring somebody in, as you would at a trial? Well, Your Honor, we, we filed our motion for summary judgment in January. We gave them, after some back and forth, two months to file their opposition. They said they wanted to hire experts. We deposed their expert. Personally, if I had seen, if I had read the deposition transcript afterwards, I wouldn't have gone forward with the, with the survey expert. Could they have submitted a declaration on behalf of somebody else in opposition to our summary judgment motion? Certainly. But they didn't. They didn't file a Rule 56F affidavit seeking additional time for more discovery. They couldn't have done it, they couldn't have done it much later. They didn't ask for that. And I don't think it is, I don't think it's a fair thing to consider, well, maybe they could have brought in another survey expert. I don't think they, I think, frankly, the time had passed. With respect to, let's take a look at the, at what they actually did, the undisputed facts. We have this tank top. It's packaged with a Strawberry Fizz Beauty Rush lip gloss. It is designed to promote the Beauty Rush products and drive sales of Victoria's Secret's beauty products. It was only sold in the Victoria's Secret stores. Even Mr. Ferone, whose testimony was disregarded by the district court, said that the only evidence of, of Victoria's Secret use of the word  At the point of sale, there can be no confusion that this word delicious on this tank top, whether it's on the mannequin or in this package, is promoting a product that comes from Victoria's Secret. There can't be. I'd like to address the whole Britney Spears, you know, somebody outside wearing the tank top, and counsel's argument that fair use doesn't apply because our witnesses admitted that the word delicious was intended to have a dual purpose, to describe the delicious attributes of the Beauty Rush products and as a playful self-descriptor of the wearer. As a playful self-descriptor of the wearer, it is not trademark infringement. It is not trademark use at all. That is quintessential speech that is protected by the First Amendment, and frankly, it is the speech of the wearer. The provision in the Ninth Circuit's articulation of the classic fair use standard or test, when it says with respect to you have to use it to describe your own goods and services, it's not meant to say you can't use it in ordinary speech. It's really meant to distinguish between classic fair use and nominative fair use, in which you're referring to the goods and services of another. There's one other point that they have brought up in their papers, and they've brought it up repeatedly, so I'd like to address it here, and that is the failure to conduct a trademark search. If you're a company and you are trying to describe your products in marketing materials, to describe them, you do not do a trademark search for every word that you use in marketing materials. It wasn't just any word. It was the word on the T-shirt. Well, actually, it was one of two words on the T-shirt. It's the one on the front that was in the middle of the package, so. That is correct. But if you're not using it as a trademark, you don't do a trademark search. And Mr. Ferone, who the district court excluded, said that you, and he, in fact, said you do it when you intend to launch a new brand. You couldn't use the word Nike on the middle of a T-shirt and claim that it referred to a Greek goddess and not expect people to be confused, could you? Nike? Yes. Oh, I don't know that Nike is the name of a Greek goddess, is it? Yes, it is. Okay. The Nike of Samothrace, also known as Winged Victory. Excuse my ignorance, Your Honor. I think that that's probably right, because at this point, I don't think, I think that almost everybody associates Nike with the shoe. But perhaps in Greece, in the right context, you could sell a T-shirt that said Nike if it refers to a Greek goddess. Even if you had a T-shirt that said Nike, and underneath it said, be a Greek goddess, it's called Winged Victory. You know, if you, under the right circumstances, you might be able to. You might even have an argument from Rolls-Royce if you used the Winged Victory underneath there, might you? I don't think the Winged Victory is actually descriptive. This is a common word in the English language. And the Supreme Court has held that you, that when you choose a common word that is descriptive, as delicious is, because it's an adjective, that you assume the risk that consumers are going to be confused when somebody uses it in its descriptive sense. And that is why, frankly, the factors concerning likelihood of confusion, you may disagree with them, and I think we address them in our papers. But it doesn't matter whether there's some evidence of confusion or some evidence of a likelihood of confusion. The test is whether, when you take all of the facts, the undisputed facts and whatever disputed facts there are, and view them in favor of the plaintiff or the nonmoving party, whether or not the test of fair use is met. And I submit here it was, Victoria's Secret used it as a descriptor, it used it fairly and in good faith, and it did not use it as a trademark. It is a matter of common knowledge that on clothing, there is a single place where people expect the source of origin, the source or origin indicator to be. And that is here, and that's where it was, and it is visible at the point of sale. And whether or not it's visible when Brittany wears it is irrelevant, because that's quintessential free speech. I have 10 seconds left. Do you have any questions? You're actually over? Oh, sorry. I'm 10 seconds over. Judge Nelson, do you have any questions? No. Okay. Thank you very much. Your Honor, I think you reserved a little bit of time. Yes, I did. Thank you, Your Honor. Let's talk about Mr. Marylander, first of all. We need to look at the timing of the, excuse me one second, the timing situation. I think I reserved five minutes, but it's only showing a minute here. That's all that you reserved on your time. You didn't watch your time. You wanted to reserve five minutes. You didn't. Okay. Look at the timing. Fortune's opposition to the summary judgment was filed on March 21st. The objections to Mr. Marylander's declaration were filed on April 21st with a hearing on April 28th. It wasn't exactly, we did not have an opportunity to respond to those objections. We weren't afforded the opportunity to in any way respond to the objections prior to this hearing. Second issue is Mr. Marylander, who is experienced, says this does comply, and he justified why online surveys are appropriate. There was no evidence or contrary evidence that this wasn't, didn't meet satisfactory or acceptable principles. As to the use of the word delicious, I would point out it was with a capital D, not a lowercase d. It didn't say it's delicious or delicious with an explanation point. It was just the word delicious used as an attention getter in the same way that Victoria's Secret uses the pink or very sexy trademarks that it owns on wearing apparel. I'm out of time, so if there's any questions. Thank you very much, counsel. Thank you. With that, we've completed the day's calendar. As soon as the panel has departed the room, the court will stand in recess until tomorrow morning. Thank you.
judges: Nelson T. G., Bybee, Smith M.